FORDYCE B. PERKINS *vs.* ANSEL N. BOOTHBY and others.

York.　Opinion March ·9, 1880.

*Agency.　Liability of principal.*

An agent, appointed by a company to have charge of a store, sell the goods, and from time to time make such purchases of goods as might be necessary in his judgment, subject to the general oversight of the directors, has no authority to give notes of the company in order to procure loans of money; and when notes in suit were thus given the plaintiff cannot recover.

When an agent without the authority or knowldge of his principal, borrows money and applies it to the payment and discharge of the legal liabilities of his principal, and the principal knowingly retains the benefit of such payment, the lender may recover therefor in an action against the principal for money had and received.

A principal cannot knowingly retain the benefit of money hired by his agent, in the name of the principal, and at the same time legally refuse to repay the loan upon the ground that the agent had no authority to borrow money.

THIS was an action of assumpsit upon five promissory notes. The first, dated November 8th, 1875, for $140, payable on demand with interest; second, dated February 3d, 1876, for $250, payable on demand with interest at seven per cent. ; third, dated September 16th, 1876, for $145, payable on demand with interest; fourth, dated September 22d, 1876, for $900, payable on demand with interest; and fifth, dated January 17th, 1877, for $500, payable on demand with interest.

The action was referred, and the report of the referee makes a part of the case, and "is submitted to the full court to be acted upon · with same powers as this court." The plaintiff was allowed to amend his writ by filing a count for money had and received.

Report of referee.—"YORK, ss. Pursuant to the foregoing rule, I, the referee therein named, having notified, met and fully heard the parties, and maturely considered their several allegations, and the evidence produced to support the same, am of opinion, and do report accordingly, that the defendants were a joint stock company, organized under a code of by-laws for buying and selling dry goods and groceries for a profit, and for

this purpose occupied a store. The directors annually chosen, as provided by the by-laws, had the general charge and control of the business, and in June, 1872, they appointed A. L. Cleaves an agent of the company, whose duty it was to have charge of the store, sell the goods, and from time to time make such purchases of goods as might be necessary in his judgment, subject to the general oversight of the directors. The agent usually purchased the goods upon the credit of the company, sometimes giving a company note therefor, which notes were recognized as binding, and were paid. He had no authority for hiring money upon the credit of the company, or giving the company notes therefor, unless implied from his agency. In a few instances he borrowed money of persons not members for the payment of debts previously contracted for the purchase of goods, for which he gave a company note. These notes, with two exceptions, were paid by the agent, and neither these notes nor the fact of hiring the money came to the knowledge of the directors. In these two exceptions the notes were not fully paid by the agent, and after the company ceased to do business they were presented to and paid by the person appointed to settle its affairs."

"In several instances the agent hired money of some of the directors and members to meet debts falling due for goods purchased, in some cases giving company notes, which loans he repaid without the knowledge of any except the lenders. At or about the dates of the notes in suit, this agent hired of the plaintiff through Silas Perkins, acting as plaintiff's agent, the several sums of money for which said notes are given. Four of the notes were signed and delivered by said Cleaves to the payee while he was acting as agent for the company. The fifth, that for $900, dated September 22, 1876, though signed before was not delivered by Cleaves until after he was discharged from his agency. In making these loans neither Silas Perkins nor his principal, the plaintiff, had any knowledge of any other loans of money obtained for the company by Cleaves, or of the notes given by him in their name, but relied upon his authority as agent. Neither the directors nor the company had any knowledge of these loans or the notes given for them until after they had ceased to do business, and then they repudiated both loans and notes."

"The money for which these notes were given was received by Mr. Cleaves, the company's agent, and by him appropriated to the payment of the debts of the company, contracted for goods previously purchased, but the directors had no knowledge of such loan or appropriation unless knowledge is implied from the fact that it was done by their agent."

"If upon the foregoing statement the plaintiff is entitled to recover upon the four notes only which were delivered by Cleaves during his agency, then he is entitled to judgment for the sum of eleven hundred eighty-three 76–100 dollars ($1183.76) debt; if upon all the notes he is entitled to judgment for twenty-two hundred six 46-100 dollars ($2206.46) debt, or if he is not entitled to recover upon either note and can recover for money received, upon this writ with such amendments as the court may allow, then he is entitled to the latter sum of twenty-two hundred six 46–100 dollars ($2206.46) debt, and in either case to costs of reference, taxed at forty-seven dollars and seventy-two cents ($47.72) and costs of court, to be taxed by the court."

"If the plaintiff is not entitled to recover as above, then judgment is to be entered for the defendants, with costs of reference, taxed at thirteen dollars and ninety-two cents ($13.92) and costs of court, to be taxed by the court.

CHARLES DANFORTH."

*R. P. Tapley* and *J. M. Goodwin*, for the plaintiff, cited: Story Agency, c. 5, § 45, c. 6, §§ 84, 85, 87, 89, 92, 95; 104; 1 Bell's Com. Law, 478; 1 Addison Contr. § 56; *Houghton* v. *Nash*, 64 Maine, 477; 1 Addison Contr. 50; 3 *Ibid.* 513; U. S. Dig. Tit. Money Received, §§ 5, 8, 11, and cases cited; *Mason* v. *Waite*, 17 Mass. 560; 2 Denio, 91; *Lewis* v. *Sawyer*, 44 Maine, 332; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; Angell & Ames Corp. 599, 600.

*H. Fairfield*, for the defendant, cited: Story Agency, § 119, a; § 69 and note 2; 1 Pars. Notes & Bills, 107; 1 Pars. Contr. 49, 51, note h.; 9 Port. (Ala.) 428; 6 Blackf. (Ind.) 369; 10 Johns. (N. Y.) 114; *N. Y. Iron Mine Co. in Error* v. *First Nat. Bank of Negaunee*, opinion S. J. C. of Michigan, October,

1878, reported in Michigan Lawyer for October, 1878, p. 85. The plaintiff lays great stress upon the fact that this money was received by Cleaves and appropriated by him for the payment of goods, which went into our store. But this is not an equity matter, and the question is not, Who received the benefit of the money borrowed? but only, Was Cleaves authorized to borrow money? or, Was the plaintiff justified in believing he had that authority? The manner in which Cleaves appropriated the money, does not change the law of agency.

SYMONDS, J. Upon the facts found by the referee in this case, it must be held that the agent, Cleaves, had no authority to give the notes of the defendant company, in order to procure loans of money. As the notes in suit were given by the agent for that purpose, it would seem that the plaintiff cannot recover upon them.

But it appears by the report of the referee, that, "the money for which these notes were given was received by Mr. Cleaves, the company's agent, and by him appropriated to the payment of the debts of the company, contracted for goods previously purchased." The directors of the company had no knowledge of such loan and appropriation at the time they were made, but by the act of their agent in so applying moneys hired of the plaintiff, certain legal liabilities against the defendants have been discharged. The case presents the question, whether the defendants can knowingly retain the benefit of money so hired and used, and at the same time legally refuse to repay the loans.

In considering this question, it may properly be assumed from the statement of the case, that the agent had no more authority to hire money upon the credit of the company, than he had to effect such loans by issuing the notes of the company therefor;—that the defendants had no knowledge of the loans or the notes, until after they had ceased to do business as a joint stock company, when they repudiated both. Such repudiation, however, was apparently a declaration only, not an act. The appropriation by the agent of the loans to the payment of the debts of the company remained effective. The directors did nothing to defeat it. The debts were discharged. The acts

of the agent in hiring and in appropriating the money were beyond his authority and without the knowledge of the principals. The only ground of liability is the fact that the defendants, while in terms repudiating at once upon notice the unauthorized acts of their agents in their behalf, at the same time had received at the date of the writ, and, after knowledge of the facts, still retain the benefit of the loans so effected and used without authority, in the discharge of certain valid claims, which would now be in full force against them, except for the acts done by the agent in excess of his authority.

The duty of the agent was "to have charge of the store, sell the goods, and from time to time to make such purchases of goods as might be necessary in his judgment, subject to the general oversight of the directors." In the conduct of the business of the company, he assumed to hire money for them, and to pay their debts for goods that had been purchased. Notwithstanding debts of the company to the full amount of the loans have been discharged thereby, the defendants claim that the agent's want of authority relieves them from liability to the lender, and affords a defence, not only against the notes, but also against the claim to recover under the common counts as for money had and received.

Questions analogous to this have, perhaps, been most frequently considered in reference to the liabilities of corporations for the unauthorized acts of their agents. In *Merchants' Bank* v. *State Bank*, 10 Wallace, 604, it was held that if a cashier, without authority to buy coin in behalf of his bank, does so buy it and it goes into the funds of the bank, the bank is liable upon the principle of *quantum valebat*. "If the certificates and the gold actually went into the State Bank, then the bank was liable for money had and received, whatever may have been the defect in the authority of the cashier to make the purchase."

In the opinion of Mr. Justice HUNT, in *Mayor of Nashville* v. *Ray*, 19 Wallace, 484, the following language is used which is sufficiently intelligible without a statement of the case:— "It is a general rule, applicable to all persons and corporations, and is a dictate of plain honesty, that whoever knowing the facts of the case retains and uses money received by an agent for his

account, cannot repudiate the contract on which it is received. *Bissell* v. *Jeffersonville*, 24 Howard, 300 ; Sedgwick on Statutory and Constitutional Law, 90. Putting this transaction most strongly against the plaintiff, by assuming that this re-issue was not *ultra vires* merely, but was positively prohibited by law, the city is still responsible to the holder of the checks for the money it has received and still retains. Conceding the illegal contract to be void, or forbidden by the legislature, it is to be remembered that the prohibition is upon the city only, and not upon the person dealing with it; the illegality is on the part of the city, and not of the person receiving the checks. The contract may well be void as to the city, and its officers punishable for the offence of making it, and yet it may stand in favor of innocent persons not within the prohibition. Such was the decision in *Tracy* v. *Talmage*, 14 N. Y. 162 ; in *Curtis* v. *Leavitt*, 15 *Id.* 9 ; and in *The Oneida Bank* v. *The Ontario Bank*, 21 *Id.* 490. The latter case was briefly this : 'The general banking law of New York prohibited the issuance by a bank of a certificate of deposit payable on time. The cashier of the Ontario bank received $5000 in cash from one Perry, and delivered to him a certificate of deposit postdated about four weeks, for the purpose of raising funds for the bank. This draft Perry transferred to the Oneida bank, who brought suit upon it. It was held, assuming this draft to be void, that the party making the contract could reject the security, and recover the money or value which he advanced on receiving it. It was held further, that the right of action to recover this money passed to the Oneida bank upon the transfer of the certificate to them. The plaintiff recovered the money advanced to the bank upon the illegal certificate. Both of these principles were held with equal distinctness in *Tracy* v. *Talmage*, *supra*.'"

"They seem to me to be decisive of the right of the plaintiff to recover upon the checks, regarding them in their most unfavorable aspect, the amount of money advanced to, and yet held by the city."

The differences of opinion in the court, in this case, do not seem to have reference to the general application of the principles cited in this extract, but to a distinction in this respect in

favor of municipal corporations, the officers of which, some of the judges held, cannot, like the officers of a private corporation, create by their acts an estoppel against the corporation, its tax-payers or people, so as to render illegal issues of ordinary city drafts valid in the hands of holders for value; and cannot subject the city to liability for money illegally borrowed, the holders and the lenders in such case being affected with notice of the illegality.

"There seems to be no substantial reason whatever for not extending the principle here involved to all analogous cases. If liable in one case why should not a corporation be always liable to refund the money or property of a person which it has obtained improperly and without consideration, or if unable to return it, to pay for the benefit obtained thereby? To say that a corporation cannot sue or be sued upon an *ultra vires* arrangement is one thing. To say that it may retain the proceeds thereof, which have come into its possession without making any compensation whatever to the person from whom it has obtained them, is something very different, and savors very much of an inducement to fraud." Green's Brice's *Ultra Vires*, 618.

The question whether upon reason and authority the application of this principle should be extended to municipal corporations, or whether, on the contrary, the purposes for which such bodies are organized, the limited powers conferred upon them, as well as considerations of public policy and safety, may remove them from such liability, is one of great importance. It does not arise in this case.

The principle referred to in the last citation, and stated as a general one, applicable to persons and corporations, in the opinion of Mr. Justice HUNT, is decisive of the present case. It has received a wide and uniform recognition in the leading authorities. It is more or less directly recognized in *Chicago Building Society* v. *Crowell*, 65 Ills. 459, 460; *DeGroff* v. *American Linen Thread Co.* 21 N. Y. 124; *Bissell* v. *Michigan Southern & Northern Indiana R. Co.* 22 N. Y. 258; *Bradley* v. *Ballard*, 55 Ills. 417; *Steam Navigation Co.* v. *Weed et als.* 17 Barb.

378; *State Board of Agriculture* v. *Citizens R. Co.* 47 Ind. 407; (17 Am. R. 102,); *Dill* v. *Wareham*, 7 Met. 438; *White* v. *Franklin Bank*, 22 Pick. 181; *Atlas Bank* v. *Nahant Bank*, 3 Met. 581; *Railway Company* v. *McCarthy*, 6 Otto, 267; *Franklin Company* v. *Lewiston Savings Bank*, 68 Maine, 49; compare, also, *Concord* v. *Delaney et al.* 56 Maine, 201; and 58 Maine, 309; *Parish* v. *Wheeler*, 22 N. Y. 503.

The conclusion reached upon this branch of the case renders it unnecessary to consider in detail the question of the agent's authority, or whether the defendants were rendered liable by any recognition of his acts, as those of one who was authorized to bind them by notes so issued in their behalf.

According to the stipulation of the report, if the plaintiff can recover for money had and received by the defendants, he is entitled to recover the sum of $2206.46.

> *Judgment is to be entered for the plaintiff for the sum of $2206.46 with interest from the date when the report of the referee was made, as the debt; with costs of reference as taxed by the referee, and costs of court to be taxed at Nisi Prius.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.