Argued October 28, reversed December 8, 1914.

# UNITED STATES NAT. BANK v. HERRON.*

(144 Pac. 661.)

**Principal and Agent—Powers of Agent—Construction.**

1.  When authority is conferred on an agent by power of attorney, general words in the instrument are to be construed as restricted by the context, and no authority can be considered given except such as is actually used or is necessary to execute the powers conferred.

[As to interpretation of power of attorney, see note in 35 Am. St. Rep. 593.]

**Principal and Agent—Powers of Agent—Special Agency.**

2.  Where a power of attorney authorized the principal's agent to execute a described promissory note and a deed of trust to secure it, but made no attempt to confer general powers to do such acts, it is a special power.

**Principal and Agent—Powers of Agent—Incidental Powers.**

3.  A special agent, like a general agent, has by implication all powers necessary for or incident to the proper execution of his duties.

**Principal and Agent—Special Agents—Execution of Powers.**

4.  The authority of a special agent must be strictly pursued, and those who deal with him must at their peril determine the extent of his authority, as he cannot bind his principal by acts outside of the scope of his agency.

---

*On the question of the implied powers under power of attorney to transact business, see note in 4 L. R. A. (N. S.) 843.  REPORTER.

**Principal and Agent—Powers of Attorney — Execution — Validity of Act.**

5. Where a power of attorney authorized the execution of a note for $5,000 payable on or before one year after date, with interest at 6 per cent per annum, the agent is not authorized to execute two notes amounting to $5,000 with interest payable semi-annually and containing a provision that in case of default the notes should become immediately due.

[As to proper méthod of execution and acknowledgment of instrument by attorney in fact, see note in Ann. Cas. 1913D, 102.]

**Principal and Agent—Acts of Agent—Ratification.**

6. One who relies on a ratification of the unauthorized acts of an agent has the burden of proving it; hence, where ratification was claimed by the principal's appropriation of the fruits of the agency, the party asserting ratification has the burden of establishing the principal's acceptance.

From Malheur: DALTON BIGGS, Judge.

This is an action by the United States National Bank, a corporation, against Charles E. Herron, Estey A. Herron, his wife, Catherine L. Shehan, appellant, John Smith, the Empire Lumber Company, Limited, a private corporation, and the Vale Land and Irrigation Company, a private corporation. From a judgment in favor of plaintiff, the defendant, Catherine L. Shehan, appeals. The facts are stated in the opinion of the court.     REVERSED.

For appellant there was a brief over the names of *Mr. William H. Brooke, Mr. Ralph W. Swagler, Messrs. Crawford & Eakin* and *Mr. J. J. Darlington,* with oral arguments by *Mr. Brooke* and *Mr. Thomas H. Crawford.*

For respondent there was a brief and an oral argument by *Mr. George E. Davis.*

In Banc.   MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to recover from the defendants, Charles E. Herron, Estey A. Herron and Cath-

erine L. Shehan, the principal sum of $5,000, with interest thereon at the rate of 6 per cent per annum from September 6, 1910, claimed to be due on two promissory notes, and for the foreclosure of a mortgage, claimed to have been executed by said parties on 480 acres of land in Malheur County, to secure the payment of said sum of $5,000 and interest, etc. The complaint asked, also, for the correction of an error in the description of the said land as stated in the complaint.

Both of said promissory notes and also said mortgage are dated and were executed on September 6, 1910, at Vale, Oregon, and said notes were made payable at the United States National Bank of Vale. The defendant Catherine L. Shehan resides in the City of Washington, D. C., and she did not execute either of said notes or said mortgage in person, and she was not in Oregon when they were executed. One of said notes was executed for $3,000 and the other for $2,000. They are exactly alike, except as to the amounts for which they were executed. The said notes were made payable to the order of Harry R. Garrett on or before one year after date, etc., and each of them is witnessed by two witnesses. Said mortgage was made to Harry R. Garrett, and it is in the usual form. Said notes were indorsed and passed to the plaintiff for a valuable consideration at about the date of the execution thereof. Said mortgage was assigned, but the assignment was not under seal, nor was it acknowledged before any officer.

The complaint alleges the execution of said promissory notes, their negotiation, and the execution and assignment of said mortgage and the recording of said mortgage. The complaint is lengthy, and sets out a

copy of a power of attorney, executed by Catherine L. Shehan to Charles E. Herron, authorizing him to execute, and sign her name to a negotiable promissory note and deliver the same to Harry R. Garrett for $5,000; it to be payable to the order of said Garrett, on or before one year after its date, bearing interest at 6 per cent per annum and payable at any bank in Vale, and authorizing him to make a mortgage on said 480 acres of land, to secure the payment of said note, etc. Paragraph 16 of said complaint is as follows:

"That said notes and said mortgage were given to secure a loan of $5,000, which sum in cash, lawful money of the United States of America, was on the execution and delivery of said instruments paid over to the said Charles E. Herron, and the whole thereof was thereupon by said Herron applied wholly to the use and benefit of the defendant Catherine L. Shehan, by investments in her business pursuits and to the payment of her just debts and liabilities all in Malheur County, Oregon, all of which benefits she, the defendant Shehan, then and there accepted and retained, and she does now still have and retain the same."

Catherine L. Shehan filed an answer to said complaint denying each and every allegation thereof, except paragraphs 1, 2, 4, 10 and 11. She denies paragraph 16 of the complaint set out *supra.*

A decree was rendered in favor of the plaintiff and against Charles E. Herron, Estey A. Herron and Catherine L. Shehan for the recovery of said $5,000 and interest thereon at the rate of 6 per cent per annum from September 6, 1910, and for costs and disbursements, and foreclosing said mortgage, etc. The defendant Catherine L. Shehan appeals from the whole of said decree; the other defendants do not appeal. In form, said promissory notes are joint and several.

The defendant Shehan makes several points upon which she relies for a reversal of said decree.

She contends that she did not authorize her attorney in fact, Charles E. Herron, to execute either of said promissory notes or said mortgage, and she bases this contention upon the terms of the power of attorney, which she executed to him. Said power of attorney was received at Vale the day that said notes and said mortgage were made, and all of the parties to said notes and mortgage and the plaintiff bank knew the contents of said power of attorney before said notes and mortgage were executed and before any part of the consideration for the execution of said notes and mortgage was paid or delivered. Said notes and said mortgage show on their faces that the name of Catherine L. Shehan was subscribed thereto ''by her attorney in fact, Charles E. Herron.''

The following is a copy of said power of attorney:

''Know all men by these presents, that I, Catherine L. Shehan, a widow, of Washington City, in the District of Columbia, do hereby make, constitute and appoint. Charles E. Herron of Vale, in the State of Oregon, my true and lawful attorney, in and for the purposes hereinafter mentioned, to wit: He is hereby authorized and empowered to execute and sign my name to a negotiable promissory note and deliver the same to Harry R. Garrett, said note to be dated September 6, 1910, for the sum of five thousand dollars ($5,000), payable to the order of said Garrett on or before one year after its date and bearing interest at six (6) per cent per annum and payable at any bank at Vale, Oregon. And the said Herron is further authorized to execute in my name a mortgage, or deed of trust, to secure the payment of said note and interest, upon and covering four hundred and eighty (480) acres of land owned by me in Malheur County, Oregon, that being all the land owned by me in said county,

and also all my right, title and interest in and to all water rights and surveys and reservoir and dam sites owned by me in said county. Said mortgage or deed of trust to be in the ordinary form, used in said county and the said Herron is authorized to sign my name to said note and mortgage, or deed of trust, and to acknowledge for me and in my name the execution of the said mortgage, or deed of trust, and to deliver said note and mortgage or deed of trust, to said Garrett, and said note and mortgage or deed of trust, so executed and acknowledged to said Garrett shall be in all respects as binding on me as though I had personally executed and acknowledged the same.

"In witness whereof, I have hereunto set my hand and seal this third day of September, 1910.

"CATHERINE L. SHEHAN.    [Seal.]

"Signed, sealed and delivered in the presence of us as witnesses:            ALEXANDER H. GALT.

"M. A. BALLINGER."

Said instrument was properly executed, acknowledged and certified.

The following is a copy of one of said promissory notes:

"No. 2.    $3,000.00

"Vale, Oregon, September 6, 1910.

"On or before one year after date, for value received, I promise to pay to the order of Harry R. Garrett, at the United States National Bank of Vale, Oregon, the sum of three thousand dollars ($3,000) in gold coin of the United States, at the present standard value, with interest thereon in like gold coin at the rate of 6 per cent per annum, from date until maturity, interest to be paid semi-annually, and if not so paid, the whole sum principal and interest, to become due and collectible at the option of the holder of this note, and in case suit or action is instituted to collect this note or any part thereof, I promise to pay, in addition to the costs and disbursements provided by statute, an

additional 10 per cent of the amount sued upon for attorney's fees.                          CHARLES E. HERRON,
                              "ESTEY A. HERRON,
        "By Her Attorney in Fact, Charles E. Herron.
                              "CATHERINE L. SHEHAN,
        "By Her Attorney in Fact, Charles E. Herron.
    "Witness:
            "J. R. WEAVER.
            "JOHN W. CORSON."

The note for $2,000 is just like the foregoing copy, except as to the amount of the principal.

The main question for decision is: Did the power of attorney, set out *supra,* authorize Charles E. Herron to subscribe the name of the defendant Catherine L. Shehan to said promissory notes? The said power of attorney confers upon said Herron the following power to execute a promissory note:

"He is hereby authorized and empowered to execute and sign my name to a negotiable promissory note and deliver the same to Harry R. Garrett, said note to be dated September 6, 1910, for the sum of five thousand dollars ($5,000), payable to the order of said Garrett, on or before one year after date, and bearing interest at 6 per cent per annum, and payable at any bank at Vale, Oregon."

It will be observed that said instrument makes Herron the special agent of Mrs. Shehan for certain stated purposes: (a) He was not authorized to borrow money; but he was empowered to execute and sign her name to a promissory note having certain stated qualities. (b) He was authorized to execute one note, and it was to be for $5,000. (c) It was to be dated September 6, 1910, and to be a negotiable note, and payable to the order of said Garrett on or before one year after its date at any bank in Vale, and it was to bear interest at the rate of 6 per cent per annum. The

power does not state anything concerning the execution of said note by any person other than Mrs. Shehan. Said power, also, authorized Herron to execute, in the name of Mrs. Shehan, a mortgage or deed of trust "to secure the payment of said note and interest," upon land referred to in said power.

Instead of executing one note for $5,000, he executed two, one for $2,000 and the other for $3,000. Said notes were executed and signed by Charles E. Herron and Estey A. Herron, as makers thereof, in addition to having the name of Mrs. Shehan subscribed thereto by said Herron as her attorney in fact. Said notes are in form joint and several. According to said power, the note that Herron was authorized to execute for Mrs. Shehan was to be payable "on or before one year after its date, and bearing interest at 6 per cent per annum." The notes executed are made payable on or before one year after date "with interest thereon in like gold coin at the rate of 6 per cent per annum from date until maturity, interest to be paid semi-annually, and if not so paid, the whole sum, principal and interest, to become due and collectible at the option of the holder of this note." If the note had been executed according to the power, the interest would have become due at the end of the year. According to the notes that were executed, the interest became due semi-annually, with a stipulation that, if the interest should not be paid semi-annually, the principal sum and interest should become due and collectible at the option of the holder of the notes. The notes executed contain, also, a promise to pay 10 per cent of the amount sued for, as attorney's fees. The notes are witnessed.

1–4. When power is conferred upon an agent, by a power of attorney, the meaning of general words in the instrument is restricted by the context and con-

strued accordingly, and the authority given is construed strictly so as to exclude the exercise of any power that is not warranted either by the terms actually used, or as a necessary means of executing, with effect, the authority given. This is true of powers given to execute or indorse negotiable paper.

In 1 Clark & Skyles, Law of Agency, Section 266, the authors say:

"Power to draw and indorse negotiable paper, like all other powers of attorney, will always be strictly construed, and will not be held to have been conferred upon an agent, unless the intention to give such authority plainly appears; and where it has been given it must be strictly pursued and will not be extended beyond the limits specified in the power."

Section 267 of the same work illustrates the rule, stated *supra,* as follows:

"Thus an agent who is authorized to draw and indorse bills of exchange in the name of the principal has no power to draw and indorse them in his own name, or in the joint name of himself and principal, or of his principal and third parties; nor can he draw or indorse them in the name of his principal, when authorized to draw them in his own name," etc.

1 Mechem, Agency, Section 784, says:

"Formal instruments conferring authority will be strictly construed, and can be held to include only those powers which are expressly given and those which are necessary, essential and proper to carry out those expressly given. It will indeed be presumed that the principal, in conferring a power, intended to confer with it the right to do those things without which the object contemplated could not be accomplished, but beyond this the authority will not be extended by construction."

The same work, in Section 974, illustrates the rule thus:

"Authority to sign the principal's name to promissory notes will be limited to notes drawn in the usual form, and will not authorize the execution of a note containing a provision that if not paid at maturity an additional sum of 10 per cent would be paid. Authority to an agent to draw a bill in the principal's name will not authorize a bill drawn in the joint names of the principal and the agent; nor will authority to draw a bill authorize an agent to contract to indemnify the acceptor against the consequences of his acceptance; nor will joint authority from several persons to indorse a bill in their names jointly authorize several successive indorsements," etc.

In his work on Agency (Section 68), Judge Story says:

"Indeed, formal instruments of this sort are ordinarily subjected to a strict interpretation, and the authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority given into full effect."

In *Craighead* v. *Peterson,* 72 N. Y. 279 (28 Am. Rep. 150), the facts were that the defendant executed a power of attorney, authorizing P. to draw and indorse any check or checks, promissory note or notes, on any bank in the City of New York, in which the defendant had an account, etc. P. executed, in the name of the defendant, and delivered to the plaintiff's testator, two promissory notes, payable at a bank where the defendant had no account. The court held that the making of said notes was *ultra vires,* saying, *inter alia:*

"A formal instrument delegating powers is ordinarily subjected to strict interpretation, and the authority is not extended beyond that which is given in terms, or which is necessary to carry into effect that which is expressly given. They are not subject to that liberal interpretation which is given to less formal instruments," etc.

In *Batty* v. *Carswell,* 2 Johns. (N. Y.) 49, the facts were that A authorized B to sign his name to a note for $250, payable in 6 months, and B signed it to a note for that amount payable in 60 days, and the court held that A was not bound, saying, in part:

"This was a special power, and ought to have been strictly pursued.  * * But the note that Abner Carswell authorized the witness to put his name to was to be payable in 6 months, whereas, the note he signed had only 60 days to run.   The note, then, as far as it concerned Abner, admitting that there was no revocation, was made without authority."

In *Mechanics' Bank* v. *Schaumburg,* 38 Mo. 228, the syllabus in part is:

"Where an express authority is given in writing by the principal to the agent, another or different authority cannot be implied.   The extent of the authority is to be ascertained from the instrument itself, and it cannot be enlarged by parol evidence.   A power of attorney given by a principal to his agent, to execute, sign, draw and indorse notes and bills in the business of the principal, will not import an implied authority to use the name of the principal in joint transactions with other persons and for their benefits."

In *Harris* v. *Johnston,* 54 Minn. 177 (55 N. W. 970, 40 Am. St. Rep. 312), the syllabus is:

"Each of several tenants in common of real estate executed a several and separate power of attorney authorizing the agent to sell the land and execute warranty deeds of his interest in the property, and 'to sell and indorse any promissory notes that may be taken and secured by mortgage' on the property.   *Held,* that the power did not authorize the agent to bind his principal as indorser, jointly with the other cotenants, of a note taken payable jointly to them all."

31 Cyc. 1383, says:

73 Or.—26

"Even when clearly granted, power to execute commercial paper must be strictly pursued.   Power to deal in a certain way with commercial paper is not to be enlarged by construction to permit the doing of other, although of somewhat similar things."

In *Stainback* v. *Read & Co.,* 11 Gratt. (52 Va.) 281 (62 Am. Dec. 648), the syllabus is, in part:

"A power of attorney given to an agent to act in the name and on behalf of his principal, in the absence of anything to show a different intention, must be construed as giving authority to act only in the separate individual business of the principal.   A power of attorney, to draw, indorse and accept bills, and make and indorse notes, negotiable at a particular bank, in the name of the principal, does not authorize the attorney to draw a bill in the joint names of himself and his principal."

See, also, on this point, Ewell on Agency, pp. 204, 205; *Attwood* v. *Munnings,* 7 Barn. & C. 130; *First Nat. Bank* v. *Gay,* 63 Mo. 33 (21 Am. Rep. 430); *N. R. Bank* v. *Aymar,* 3 Hill (N. Y.), 262; *Blum* v. *Robertson,* 24 Cal. 127; *Bank of United States* v. *Beirne,* 1 Gratt. (42 Va.) 234 (42 Am. Dec. 551); *Bank of Deer Lodge* v. *Hope M. Co.,* 3 Mont. 146 (35 Am. Rep. 458).

The agency of Herron was clearly a special one, to execute the note and mortgage described therein. Special authority, like a general one, confers by implication all powers necessary for or incident to its proper execution: 31 Cyc. 1343.   As shown *supra,* the authority of a special agent must be strictly pursued, and those who deal with him must at their peril determine the extent of his authority, as he cannot bind his principal by his acts outside of the scope of his authority.

5. Herron was, by the power of attorney, authorized to execute and sign the name of Mrs. Shehan to a

negotiable promissory note and deliver it to Garrett. This note was to be dated September 6, 1910, for the sum of $5,000 and payable to the order of said Garrett on or before one year after its date. It was to bear interest at the rate of 6 per cent per annum. It was to be payable at any bank in Vale. It is manifest from the terms of this power that the maker thereof intended to authorize the agent to execute a promissory note only of the kind described therein. The note was required to be negotiable and to bear a certain date and to bear interest at a stated rate, and it was required also to be "payable on or before one year after its date." If the note had been drawn as required by the power, both the principal and the interest would have become due and payable at the end of a year from its date, and an action for the recovery of either the principal or any of the interest could not, under any circumstances, have been maintained until the expiration of a year from the date of the note. The authority delegated to Herron authorized him to execute a note of that character and no other.

The notes that he executed provide, in the first place, that the principal shall be paid on or before one year from the date of the note; but they require the interest to be paid semi-annually. This is a clear and material departure from the power conferred upon the agent. The note that he was authorized to execute made the interest collectible at the end of the year; but the notes executed by him made the interest collectible at the end of six months. Furthermore, the note that the agent was authorized to execute would have made the principal collectible at the end of twelve months; but the notes executed by him made the principal collectible at the end of six months, at the option of the holders of the notes, if the interest was not paid at the end of

six months. The agent had no authority to make the interest collectible semi-annually, or to make the principal collectible at the end of six months, at the option of the holders of the notes, if the interest should not be paid semi-annually. The agent by making the interest on said notes collectible semi-annually, and providing that, if it should not be so paid, the principal should, also, become due and collectible at the option of the holders thereof, acted outside of the authority conferred upon him, and contrary thereto. The notes that he executed, and also the mortgage given to secure their payment, are not the notes or the mortgage of Mrs. Shehan, and they are void as to her.

Mrs. Shehan had a right to require that the $5,000 for which she intended to make herself liable should be included in one note, and not in several, and she seems to have done so by the power that she executed; but we do not find it necessary to decide whether the execution of the two notes instead of only one, or having said notes signed by Charles E. Herron and Estey A. Herron as makers thereof jointly with Mrs. Shehan, was such a departure from the powers vested in said agent as to invalidate said notes as to Mrs. Shehan.

We hold that the notes executed are not the notes of Mrs. Shehan, because the interest was made payable semi-annually, instead of at the end of the year, and the principal was made collectible at the end of six months, at the option of the holder thereof, if the interest should not be paid semi-annually as required by said notes. We do not find it necessary to decide whether the telegrams offered in evidence were so identified as to be entitled to be admitted in evidence. The power of attorney was in the possession of the parties when the notes and mortgage were executed, and the bank plaintiff had notice of its contents when it

obtained title to the notes.   The telegrams did not add anything to the powers of the agent, Herron.

6. The plaintiff alleges in the complaint that the $5,000 which was loaned when the notes and mortgage were executed was paid to Charles E. Herron, and that said Herron used the whole thereof for the use and benefit of Mrs. Shehan for improvements in her business in Malheur County, and that she accepted and retained, and that she does now accept and retain, said benefits.

Although it is not so stated, we presume that this allegation was set forth in the complaint to show a ratification of the acts of the said Herron in obtaining said money upon said notes.   This allegation was denied by Mrs. Shehan, and the plaintiff failed to sustain it by proof.   There was a complete failure to prove the facts necessary to show a ratification.   There was no evidence to show that Mrs. Shehan had knowledge of the contents of the notes to which Herron subscribed her name until this suit was commenced.   The evidence shows that she resides in the City of Washington.   There is no evidence that she was ever in Oregon.   The evidence fails to show what was done with the $5,000.   The plaintiff produced evidence that Charles E. Herron had deeded his land to Mrs. Shehan and that she had given him an agreement that he was to have the land back on paying her a certain amount of money; but there was no evidence to prove that Mrs. Shehan received any part of said money. The evidence shows that Herron was trying to borrow the money and that he obtained it, but it does not appear what he did with it.   In addition to the exhibits put in evidence, the plaintiff had but one witness that gave evidence concerning the facts in issue.   It is a well-settled principle of law that a party who relies on ratifi-

cation of unauthorized acts of an agent has the *onus* of proving the necessary facts to show such ratification.

31 Cyc. 1647 states the rule thus:

"A party relying on a ratification of the unauthorized act of an agent has the burden of proving it. To meet the burden it is necessary to show that the ratification was made under such circumstances as to be binding on the principal, especially to see to it that all material facts were made known to him, or, as is sometimes stated, to see to it that there was an adoption of the act by the principal, with full knowledge of what had been done in his name and on his behalf; and it does not suffice to show that the principal omitted to make inquiries and that facts might have been learned by diligence on his part, if it appears that he was misapprehended or was mistaken as to material facts. But in sustaining the burden of proof cast on the one seeking to enforce a liability by ratification, arising from silence or a failure to repudiate an unauthorized act after knowledge thereof, it is not necessary for him to show that by such silence he has been misled to his prejudice."

We find that the court below erred in rendering a decree in favor of the plaintiff and against the defendant Catherine L. Shehan, upon said promissory notes and said mortgage; and we find, also, that said notes and said mortgage are utterly void as to her.

The decree of the court below is reversed so far as it relates to the defendant Catherine L. Shehan, and as to her this suit is dismissed.     REVERSED.

MR. JUSTICE BEAN delivered the following dissenting opinion:

I am unable to give my assent to the conclusion reached by Mr. Justice RAMSEY in the opinion in this case.

It appears from an agreement executed on the 30th day of July, 1909 (Plaintiff's Ex. No. 5), that Catherine L. Shehan and Charles E. Herron were about to engage in acquiring, improving and promoting an irrigation project in Malheur County, Oregon. Herron represented that he had procured deeds to certain lands and water rights to be placed in escrow in the plaintiff bank at Vale, Oregon, taking title in his own name. By the agreement made between Catherine L. Shehan of Washington, D. C., party of the first part, Charles E. Herron of Vale, Oregon, party of the second part, and M. A. Ballinger of Washington, D. C., party of the third part (who was to act as trustee in the matter), Mrs. Shehan executed to Herron and delivered a promissory note for $13,500 to the trustee for herself and Herron as a promotion fund, and the latter transferred the title to the lands and water rights to Mrs. Shehan, which title she was to hold until such time as the stock and bonds of a corporation to be formed should be ready for delivery. The capital stock of the corporation to be issued was of the par value of a million dollars and bonds to the amount of $300,000 were to be issued and sold. When this was done, Mrs. Shehan was to deed the property to the corporation and receive all the capital stock except $950,000, which was to be delivered to Herron. The bonds were to be transferred to Ballinger in trust to be sold to pay a $13,500 note executed by Mrs. Shehan to Herron and to be discounted by Ballinger, and to pay $3,000 to Herron. The remainder of the bonds were to belong to the corporation.

It is seen that Mrs. Shehan did not buy the land and water rights, but held the record title as a mortgagee as security for having signed the note given to obtain money to be used in promoting the irrigation

project.   The lands were embraced in what was known
as "Bully Creek Reservoir Site," and the water rights
were the Bully Creek water rights.   In 1910 Herron
applied for more money.   A copy of a telegram intro-
duced in evidence reads thus:

"Washington, August 26th, 1910.
"Chas. E. Herron:
"You are authorized to execute my note and mort-
gage of all my Bully Creek holdings to Garrett,
five thousand dollars due on or before one year, 6%
interest.               CATHERINE L. SHEHAN."

A copy of another telegram in the record is as fol-
lows:

"Washington, D. C., September 4, 1910.
"To Chas. E. Herron, Vale, Oregon.
"In order to enable you to borrow $5000.00 I waive
my priority to that extent under my contract on Bully
Creek property in favor of Garrett, and authorize you
to make him a first lien mortgage.   I have confirmed
this by letter.
"[Signed]   CATHERINE L. SHEHAN."

The following is a copy of a telegram received by
Herron about that time:

"Wash. D. C. 3 & 4th.
"Chas. E. Herron, Vale, Oregon.
"Power attorney to execute note mortgage mailed
today complete authority.       M. A. BALLINGER."

The power of attorney which is in question in this
suit arrived at Vale in the mail of September 6th.
The money was procured from two sources: $2,000
from Mrs. Corson, and $3,000 from the bank.   Notes
corresponding to the amounts were given to Harry R.
Garrett, the person named in the power of attorney,
and a mortgage on the land and water rights was exe-
cuted and delivered to him to secure their payment.
At the same time Garrett assigned the mortgage and

the two notes to C. W. Thebaud, an officer of the bank, and the mortgage and assignment were afterward recorded. At the time of receiving the notes and mortgage, Thebaud executed what was termed a declaration of trust acknowledging that he held them in trust for the bank and for Mrs. Corson. Afterward Thebaud indorsed the notes to the plaintiff bank. It is shown by the evidence of J. W. Corson (pages 16, 17, Trans.) that the money was paid over to Mr. Herron for Mrs. Shehan, to quote:

"That amount, $5,000 actual cash, was received by Charles E. Herron under his power of attorney for Catherine L. Shehan."

From the evidence of J. W. Corson to whom Herron made an application for a loan and who states that he had personal knowledge of the negotiations and opened and read several of the telegrams received, the following appears:

"A. Mr. Herron made application to Mrs. Shehan for $5,000 which he needed on the property out here, and she wired him that she didn't have the cash, but if he could borrow it, to borrow it, and she would pay it.

"Q. What property do you have reference to?

"A. The Bully Creek interests that were deeded by Mr. Herron to her, including the land described in the deeds from Herron to Catherine L. Shehan, deeded land and water rights which she always referred to as her Bully Creek property.

"Q. And she and Herron were endeavoring to raise money for the improvement of that property?

"A. Yes.

"Q. And Herron was here in person, was he not?

"A. Herron was here in town.

"Q. Talked with you about it?

"A. Talked with me about it, and I told him I could get him the money if he would get me a mortgage on the property.

"Q. And did you have any communication with or from Mrs. Shehan in regard to the matter?

"A. I did; I had numberless telegrams.

"Q. Have you got all those telegrams?

"A. I have.

"Q. Will you produce them?

"A. I have that one. (Witness hands paper to counsel.) What date is that?

"Q. August 26th.

"A. That seems to be the first one. (Witness hands three other papers to counsel.)"

The power of attorney in question was in the following terms:

"Know all men by these presents, that I, Catherine L. Shehan, a widow, of Washington City, in the District of Columbia, do hereby make, constitute and appoint Charles E. Herron of Vale, in the State of Oregon, my true and lawful attorney, in and for the purposes hereinafter mentioned, to wit: He is hereby authorized and empowered to execute and sign my name to a negotiable promissory note and deliver the same to Harry R. Garrett, said note to be dated September 6, 1910, for the sum of five thousand ($5,000) dollars, payable to the order of said Garrett on or before one year after its date and bearing interest at six (6) per cent per annum and payable at any bank at Vale, Oregon. And the said Herron is further authorized to execute in my name a mortgage, or deed of trust, to secure the payment of said note and interest, upon and covering four hundred and eighty (480) acres of land owned by me in Malheur County, Oregon, that being all the land owned by me in said county, and also all my right, title and interest in and to all water rights and surveys and reservoir and dam sites owned by me in said county, said mortgage or deed of trust to be in the ordinary form, used in said county and the said Herron is authorized to sign my name to said note and mortgage, or deed of trust, and to acknowledge for me and in my name the execution of the said mortgage, or deed of trust, and to deliver

said note and mortgage or deed of trust to said Garrett, and said note and mortgage or deed of trust, so executed and acknowledged to said Garrett shall be in all respects as binding on me as though I had personally executed and acknowledged the same.

"In witness whereof, I have hereunto set my hand and seal this third day of September, 1910. .

"CATHERINE L. SHEHAN.    [Seal.] "

This instrument was acknowledged and recorded in Malheur County, Oregon.

It is contended by counsel for defendant, Mrs. Shehan, that the note and mortgage were void for the reasons: (1) That two notes were executed instead of one; (2) that the notes provided that the interest should be paid semi-annually, and, if not so paid, the whole sum should become due; (3) that Herron and wife signed the notes and mortgage, thereby creating a cloud upon Mrs. Shehan's title to the property; that there was a departure from the power of attorney.

The evidence produced by the plaintiff is not contradicted. There was no violation of the terms of the power. The defendants offered no evidence in the case. It is apparent from the record that Mrs. Shehan desired to obtain the loan of $5,000 for Herron to use in promoting the irrigation project. There is no pretense that she desired the money to be forwarded to her at Washington, hence it must be conceded that she obtained the money and that it was delivered to Herron as it was intended to be, and for her benefit. This was on September 6, 1910. Mrs. Shehan retained the benefit of the loan and speculated thereon. She made no known objection to the manner of the execution of the power conferred by her upon Herron until the commencement of this suit February 3, 1913, more than two years and five months after the

power had been conferred. She thereby impliedly waived any variance or departure in the execution of the power conferred, and was liable for the debt. It is therefore plain that the $5,000 in question was invested in the same manner as the proceeds of the former note of Mrs. Shehan, and would inure to the benefit of the latter. In the event of the scheme being successful, she would realize a large profit as she was to have $50,000 of the capital stock of the corporation. It was no doubt desired to have the additional loan in order to save the $13,500 she had already invested. It therefore seems to me that it is very poor grace for Mrs. Shehan to come into a court of conscience and seek to evade the payment of her note. It is not strange that with so limited a capital to carry forward such an immense undertaking that there should be troubled waters upon the financial sea. When Mrs. Shehan authorized Herron to execute a mortgage in her name on the property held by her to secure the payment of the $5,000, it is manifest that she intended a valid mortgage to be executed, and if it was necessary for Herron and wife to sign the same, as it undoubtedly was, Mrs. Shehan has no reason to complain. She could in no way be injured. It is shown by the triple contract referred to above relating to the promotion of the enterprise, which was executed prior to the signing of the notes and mortgage, that Mrs. Shehan held title to the property embraced in the mortgage as security until a corporation should be organized and stock and bonds issued, when the same was to be transferred to the corporation. That agreement also shows Ballinger's relations to the transaction, explains why he signed one of the telegrams, and shows the relations of the parties in the promotion of the irrigation project. It appears therefrom that both Mrs.

Shehan and Herron were engaged in a joint enterprise, associated together for a common purpose. By Herron and wife signing the mortgage no cloud was created upon Mrs. Shehan's title to the property. In this respect it was at the most mere additional evidence of the true condition of the title to the same.

The power of attorney did not specify when the interest on the note should be paid. The parties seem to have prepared and executed the notes and mortgage as nearly in conformity with Mrs. Shehan's directions as they knew how to do; one of the parties being an attorney, and the bank officers taking part in the transaction. The provision in the note that the interest is ''payable semi-annually'' amounts to but little more than a matter of form. A blank for such time to be inserted is found in many of the forms of notes in general use. The same conclusion may be suggested in regard to the promise to pay the $5,000, being on two pieces of paper instead of one, as a matter of convenience.

The rule is laid down in 31 Cyc. 1263c(1):

''In General. Ratification of the acts of an agent need not in most cases be express, but may be implied from the acts and conduct of the principal, and generally speaking a ratification may be implied from any acts or conduct on the part of the principal reasonably tending to show such an intention on the part of the principal to ratify the acts or transactions of the alleged agent, particularly where his conduct is inconsistent with any other intention. * * So a ratification may be implied where the principal has carried out or offered to perform a part of an unauthorized agreement with knowledge of the whole, has accepted without objection a performance or a part payment or performance on the part of the other party to the agreement. * * Where an agency has been shown to exist, the facts will be liberally construed in favor of

the approval by the principal of the acts of the agent, and very slight circumstances and small matters will sometimes suffice to raise the presumption of ratification.''

We think the circumstances as shown by the uncontradicted evidence in this case were sufficient to put Mrs. Shehan, as a reasonably prudent person, upon inquiry as to the manner of the execution of the power. She had executed her power of attorney authorizing the procurement of the loan, the execution of a note and mortgage, and sent telegrams approving the transaction. It is not consistent with business principles that she remained for over two years without knowing or caring what had been done in regard thereto.

It is a familiar principle that a person cannot retain the fruits of an unauthorized contract made for his benefit by another assuming to act as his agent and repudiate the responsibilities of such contract, and any attempt to so retain the benefits constitutes a ratification of the unauthorized act and creates a liability on the part of such person to the same extent as if such contract were originally authorized: *La Grande National Bank* v. *Blum,* 27 Or. 215, 217 (41 Pac. 659); *Mullaney* v. *Evans,* 33 Or. 333 (54 Pac. 886); *McLeod* v. *Despain,* 49 Or. 563 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276); *Hillyard* v. *Hewitt,* 61 Or. 62 (120 Pac. 750); *Grover* v. *Hawthorne,* 62 Or. 96 (114 Pac. 472, 121 Pac. 808); *Perkins* v. *Boothby,* 71 Me. 91, 97. Subsequent ratification is equivalent to a prior authority and ratification of a part is affirmance of the whole: *Moss* v. *Rossie Lead Mining Co.,* 5 Hill (N. Y.), 137.

The question of the expenditure of the money obtained upon the note and mortgage was not one which the lender or mortgagee could oversee or direct. The

money being paid to Herron, a person designated by Mrs. Shehan to receive the same, was all the authority that the parties making the loan could exercise. The question of disbursement by the agent is entirely between the principal and the agent: *McLeod* v. *Despain,* 49 Or. 563 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276). In the case of *Wilson* v. *Troup,* 2 Cow. (N. Y.) 195 (14 Am. Dec. 461), the court said:

"In construing a power of attorney, therefore, in order to ascertain whether it has been well executed, the letter of the instrument is not to be exclusively regarded; but the important inquiry is: Have the intentions of the parties been carried into effect?"

We quote from Reinhard, Agency, Section 141:

"Where the owner of real estate makes a power of attorney to an agent to sell the land of the owner, but does not by such power of attorney authorize the agent to make conveyance thereof, and the agent, in excess of his authority, makes such a conveyance thereof, as well as sale, the principal, upon being informed, may reject such sale; but if he approves what has been done in his name, and accepts notes and mortgage given by the purchaser, and insists upon their payment after being informed of the conveyance, he thereby ratifies the conveyance and the effect of the power of attorney to convey as executed by the agent."

In all cases, whether the agency be general or special, it is said to be a universal principle that, unless the inference is expressly excluded by other circumstances, it includes all the usual modes and means of accomplishing the objects and ends of the agency: Storey, Agency, § 85. In *McDermott* v. *Jackson,* 97 Wis. 76 (72 N. W. 379), the court said:

''The principle that a person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and that any attempt so to do, with full knowledge of the facts, constitutes a ratification of the unauthorized act, and creates a liability on the part of such person to the same extent as if such contract were originally authorized, is familiar.''

The case of *Taylor* v. *Agricultural & Mechanical Assn.,* 68 Ala. 229, 237, 238, indicates that, while courts may not give relief in actions at law where powers have been illegally executed, they will give the necessary relief in equity, and that the principal receiving and using the proceeds of an unauthorized contract made by an agent *ipso facto* ratifies the acts of the agent. The court there said:

''While this rule prevails at law, in equity it is equally well settled that contracts or conveyances made by an agent having authority, though informally and defectively executed, are binding on and will be enforced against the principal. * * It is not material whether the defective execution is the result of mere inadvertence, or whether it is founded in ignorance or mistake of the law.''

*Perkins* v. *Boothby,* 71 Me. 91, 97, was an action for money had and received. The court said:

''When an agent without authority or knowledge of his principal borrows money and applies it to the payment and discharge of the legal liabilities of his principal, and the principal knowingly retains the benefit of such payment, the lender may recover therefor in an action against the principal for money had and received. A principal cannot knowingly retain the benefit of money hired by his agent, in the name of the principal, and at the same time legally refuse to pay the loan upon the ground that the agent had no authority to borrow money.''

Viewing the transaction as delineated by the documents and evidence contained in the record, we think that any departure from the terms of the power of attorney, in the execution thereof, was impliedly ratified by Mrs. Shehan. The plaintiff's witnesses have given their version of the important dealings, and, if their theory or delineation was incorrect, it was incumbent upon the defendants to explain or show wherein the evidence of plaintiff was wrong. The equities are with the plaintiff. The judgment of the lower court should be affirmed.

Mr. Justice McNary concurs in this dissent.